**Adam C. Anderson (Bar No. 024314)**

**ANDERSON BANTA CLARKSON PLLC**

**48 North Macdonald**

**Mesa, AZ 85201**

**480-272-5983**

**adam@abclawgroup.com**

**Attorney for Plaintiff**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

**PHOENIX DIVISION**

| | |
|---|---|
| **JAMIE FREY,** | |
|        **Plaintiff,** | |
|   **v.** | **No.** |
| **IQ DATA INTERNATIONAL, INC.,** | **COMPLAINT & TRIAL** |
| | **BY JURY DEMAND** |
|        **Defendant.** | |

NOW COMES the plaintiff, JAMIE FREY, by and through her attorneys, ANDERSON BANTA CLARKSON PLLC and for her Complaint against the defendant, IQ DATA INTERNATIONAL, INC., the plaintiff states as follows:

**I.**     **PRELIMINARY STATEMENT**

1.     This is an action for actual and statutory damages for violations of the Fair Debt Collection Practices Act (hereinafter "FDCPA"), 15 U.S.C. §1692, et seq., and Electronic Funds Transfer Act (hereinafter "EFTA"), 15 U.S.C. §1693, et seq.

## II.  JURISDICTION & VENUE

2.      Jurisdiction arises under the FDCPA, 15 U.S.C. §1692 et seq., and the EFTA 15 U.S.C §1693 et seq., and pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1337.

3.      Venue is proper in this district pursuant to 28 U.S.C. §1391(b).

## III.  PARTIES

4.      JAMIE FREY, (hereinafter, "Plaintiff") is an individual who was at all relevant times residing in the City of Phoenix County of Maricopa State of Arizona.

5.      As a natural person, Plaintiff is a "consumer" as that term is defined by 15 U.S.C §1693a(b).

6.      The debt that Plaintiff was allegedly obligated to pay was a debt allegedly owed by Plaintiff to Level on Sixteenth Apartments (hereinafter, "the Debt").

7.      The debt that Plaintiff allegedly owed Level on Sixteenth Apartments was for apartment rental expenses, which was for the personal use of Plaintiff and/or used for household expenditure.

8.      At all relevant times, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. §1692a(3).

9.      IQ DATA INTERNATIONAL, INC., (hereinafter, "Defendant") is a business entity engaged in the collection of debt within the State of Arizona  Defendant's principal place of business is located in the State of Washington.

10.     The principal purpose of Defendant's business is the collection of debts allegedly owed to third parties.

11.     Defendant regularly collects, or attempts to collect, debts allegedly owed to third parties in this judicial district.

12.     During the course of its efforts to collect debts allegedly owed to third parties, Defendant sends to alleged debtors bills, statements, and/or other correspondence via the mail and/or electronic mail and initiates contact with alleged debtors via various means of telecommunication, such as the telephone and facsimile.

13.     At all relevant times, Defendant acted as a debt collector as that term is defined by 15 U.S.C. §1692a(6).

14.     At all relevant times, Defendant acted through its duly authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

### IV.     <u>ALLEGATIONS</u>

### <u>COUNT I: JAMIE FREY v. IQ DATA INTERNATIONAL, INC. FOR VIOLATIONS OF THE FDCPA</u>

15.     At the end of May or early June of 2014, Plaintiff first contacted defendant after learning the Debt was being reported on her credit report.

16.     Plaintiff advised Defendant that she disagreed with the total amount of balance owed, and that she would agree to pay what she owed, but that she wanted Defendant to correct their records as to the amount owed.

17.     Defendant then informed Plaintiff that it would mark Plaintiff's account as a "refusal to pay" and informed Plaintiff that it would file a lawsuit against her and garnish her wages if she did not pay the entire balance.

18.     At no time during the course of the aforesaid telephone conversation did Plaintiff inform Defendant that she refused to pay the debt on which it was attempting to collect.

19.     Defendant's representation to Plaintiff that it would mark her account as a "refusal to pay" had the effect of conveying to an unsophisticated consumer that Defendant

would communicate to Level on Sixteenth Apartments that Plaintiff refuses to pay so that Level on Sixteenth Apartments would take additional collection actions against Plaintiff, such as filing a lawsuit against Plaintiff.

20.     Defendant's statement that it would mark Plaintiff's account as "refusal to pay" was neither a statement made in an effort to seek payment from Plaintiff nor a statement made to further the collection efforts of Defendant.

21.     The natural consequence of Defendant's statement to Plaintiff, as delineated above, was to unjustly condemn and vilify Plaintiff for her non-payment of the debt she allegedly owed.

22.     The natural consequence of Defendant's statement was to produce an unpleasant and/or hostile situation between Defendant and Plaintiff.

23.     The natural consequence of Defendant's statement was to cause Plaintiff mental distress.

24.     Upon information and belief, Defendant has not filed a lawsuit against Plaintiff for the debt she allegedly owes.

25.     Upon information and belief, at the time of making the aforementioned threat, Defendant had no intention of filing a lawsuit against Plaintiff for the debt she allegedly owes.

26.     Upon information and belief, Defendant has no authority to file a lawsuit against Plaintiff for the debt she allegedly owes.

27.     Upon information and belief, at the time of making the aforementioned threat, Defendant had no authority to file a lawsuit against Plaintiff for the debt she allegedly owes.

28.     Upon information and belief, at the time of making the aforementioned threat, Defendant did not have any employees that were licensed to practice law in the State of Arizona that were prepared to file a lawsuit against Plaintiff.

29.     At the time Defendant made the aforementioned threat to have Plaintiff's wages garnished, no lawsuit had been filed against Plaintiff for the debt she allegedly owed.

30.     At the time Defendant made the aforementioned threat to have Plaintiff's wages garnished, no judgment had been entered against Plaintiff for the debt she allegedly owed.

31.     The debt allegedly owed by Plaintiff is not a debt that can proceed to garnishment without Defendant first having secured a judgment against Plaintiff for the alleged debt.

32.     Approximately one to two days thereafter, Plaintiff again contacted Defendant in an attempt to resolve the dispute she had over the Debt with Defendant.

33.     Plaintiff spoke with a person that identified himself as "Jeff Patricielli".

34.     Plaintiff offered to make a payment arrangement to Defendant towards the debt on which Defendant was attempting to collect.

35.     By agreement, the aforementioned payments were to be bi-monthly payments of $100 each to be paid on the 15th and 30th of each month, beginning in June of 2014.

36.     The payments were to be electronically withdrawn from Plaintiff's personal checking account by way of an electronic funds transfer.

37.     The aforementioned electronic funds transfer is a payment instrument.

38.     Each payment instrument was post dated to the 15th and 30th of each month.

39.     Defendant accepted the postdated payments from Plaintiff through the months of June, July and August of 2014.

40.     Defendant presented at least six (6) postdated payments for deposit.

41.     Defendant presented two post dated payments for the month of June, 2014.

42.     Defendant presented two post dated payments for the month of July, 2014.

43.     Defendant presented two post dated payments for the month of August, 2014

44.     Defendant did not provide Plaintiff with written notification of its intent to deposit the aforementioned postdated payment for any payments for the months of June and July 2014.

45.     Beginning in May of 2014, Defendant communicated to one or more consumer reporting agencies, as that term is defined by 15 U.S.C. §1681a(f) regarding the Debt.

46.     On or about May 7, 2014, Defendant communicated to one or more consumer reporting agencies that the total balance of the Debt was $4,166.

47.     Prior to May 7, 2014, Defendant was aware that Plaintiff disputed the balance amount owed on the Debt.

48.     Despite knowing that Plaintiff disputed the aforementioned Debt, Defendant, in its communication to the consumer reporting agencies on May 7, 2014, failed to communicate that the Debt was a disputed debt.

49.     In its attempts to collect the debt allegedly owed by Plaintiff to Level on Sixteenth Apartments, Defendant violated the FDCPA, 15 U.S.C. §1692, in one or more of the following ways:

      a.   Used false, deceptive, misleading and unfair or unconscionable means to collect or attempt to collect an alleged debt in violation of 15 U.S.C. §1692e;

      b.   Falsely represented the character, amount, or legal status of any debt in violation of 15 U.S.C. §1692e(2)(A);

      c.   Represented or implied that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action in violation of 15 U.S.C. §1692e(4);

d.   Threatened to take action that cannot legally or is not intended to be taken in violation of 15 U.S.C. §1692e(5);

e.   Communicated or threatened to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed in violation of 15 U.S.C. §1692e(8);

f.   Accepted a payment postdated by more than five days and failed to notify Plaintiff in writing of its intent to deposit said payment not more than ten nor less than three business days prior to such deposit in violation of 15 U.S.C. §1692f(2).

g.   Was otherwise deceptive and failed to comply with the provisions of the FDCPA.

50.   As a result of Defendant's violations as aforesaid, Plaintiff has suffered, and continues to suffer, personal humiliation, embarrassment, mental anguish and emotional distress.

## COUNT II: JAMIE FREY v. IQ DATA INTERNATIONAL, INC. FOR VIOLATIONS OF THE EFTA

51.   At all relevant times, Plaintiff had an account in her name at Arizona Bank & Trust (hereinafter, "Arizona Bank Account").

52.   At all relevant times, the account held by Plaintiff at Arizona Bank was an asset account established to hold funds used primarily for Plaintiff's personal use and/or household expenditures.

53.   At all relevant times, the Arizona Bank Account held by Plaintiff was an "account" as that term is defined by 15 U.S.C. §1693a(2).

54.   At all relevant times Arizona Bank was a financial organization responsible for holding funds in an account belonging to Plaintiff.

55.   At all relevant times, Arizona Bank was a "financial institution" as that term is defined by 15 U.S.C. §1693a(9).

56.     At all relevant times, Defendant received funds from Plaintiff's Arizona Bank Account, which were transferred to Defendant electronically.

57.     Defendant instructed Arizona Bank, through an electronic terminal, by telephone, or other electronic means, to transfer funds from Plaintiff's Arizona Bank Account to Defendant.

58.     Plaintiff re-alleges paragraphs 38-43 as though fully set forth herein by reference.

59.     At all relevant times, the transfer of funds from Plaintiff's Arizona Bank Account to Defendant were "electronic fund transfers" as that term is defined by 15 U.S.C. §1692a(7).

60.     The transfer of funds from Plaintiff's Arizona Bank Account to Defendant were authorized by Plaintiff orally, in advance of the transfer, and were to recur regularly.

61.     At all relevant times, the transfer of funds from Plaintiff's Arizona Bank Account to Defendant were "preauthorized electronic fund transfers" as that term is defined by 15 U.S.C. §1693a(10).

62.     Plaintiff provided Defendant with information relative to her Arizona Bank Account so that Defendant could automatically withdraw payments from said account in accordance with the terms of the payment arrangement entered into between the parties.

63.     Plaintiff has not provided Defendant with written authorization to transfer any funds from Plaintiff's Arizona Bank Account to Defendant.

64.     Defendant has not obtained written authorization from Plaintiff to transfer funds from Plaintiff's Arizona Bank Account to Defendant.

65.     Plaintiff has not provided Defendant with written authorization for Defendant to carry out any electronic fund transfers from Plaintiff's Arizona Bank Account to Defendant.

66.     Plaintiff has not informed Defendant that she waived her right to provide Defendant with written authorization to execute the transfer of funds from Plaintiff's Arizona Bank Account to Defendant.

67.     At the time Defendant transferred the aforesaid funds to Defendant, from Plaintiff's Arizona Bank Account, Defendant had not obtained written authorization from Plaintiff to make the aforesaid transaction.

68.     At no time prior to performing any of the aforesaid preauthorized electronic funds transfers, did Defendant provide Plaintiff with a copy of the putative written authorization Plaintiff may have provided to Defendant to authorize Defendant to transfer funds from Plaintiff's Arizona Bank Account to Defendant.

69.     The Electronic Funds Transfer Act, 15 U.S.C. §1693 *et seq.*, provides in part as follows:

> §1693e – Preauthorized Transfers
>
> (a) A preauthorized electronic fund transfer from a consumer's account may be authorized by the consumer only in writing, and a copy of such authorization shall be provided to the consumer when made…

70.     Defendant carried out a preauthorized electronic fund transfer from Plaintiff's Arizona Bank Account without having first obtained written consent from Plaintiff to carry out the aforesaid transaction.

71.     Defendant carried out a preauthorized electronic fund transfer from Plaintiff's Arizona Bank Account without having first provided Plaintiff with a copy of the putative written authorization Plaintiff may have provided to Defendant to carry out the aforesaid transaction.

72.     Defendant's conduct in violating 15 U.S.C. §1693e(a), directly and proximately caused Plaintiff to suffer damages as set forth in the paragraphs above.

### V.    JURY DEMAND

73.    Plaintiff hereby demands a trial by jury on all issues so triable.

### VI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff, JAMIE FREY, by and through her attorneys, respectfully prays for Judgment to be entered in favor of Plaintiff and against Defendant as follows:

a.    All actual compensatory damages suffered;

b.    Statutory damages of $1,000.00 under the FDCPA;

c.    Statutory damages of $1,000.00 under the EFTA;

d.    Plaintiff's attorneys' fees and costs;

e.    Any other relief deemed appropriate by this Honorable Court.


Respectfully Submitted,


By:    s/ Adam C. Anderson

**Adam C. Anderson**

**Attorney for Plaintiff,**

**Jamie Frey**

**September 9, 2014**

**Adam C. Anderson (Bar No. 024314)**

**ANDERSON BANTA CLARKSON PLLC**

**48 North Macdonald**

**Mesa, AZ 85201**

**480-272-5983**

**adam@abclawgroup.com**

**Attorney for Plaintiff**

Complaint-10